88 N.J. Super. 253 (1965)
211 A.2d 817
JO ANN A. BARBARISE, PETITIONER-RESPONDENT,
v.
OVERLOOK HOSPITAL ASSOCIATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided June 25, 1965.
*254 Mr. Stanley J. Perwin for respondent-appellant (Messrs. Schneider & Morgan, attorneys).
Mr. Mortimer Wald for petitioner-respondent.
WEIDENBURNER, J.C.C.
This workmen's compensation appeal presents the single question of whether a practical nurse, residing by personal choice in a residence provided by the hospital-employer but not required to do so, is entitled to compensation for injuries sustained in a fall on a stairway in the residence at a time when she was not on duty or on call. Petitioner received an award in the Division of Workmen's Compensation and the hospital-employer appeals.
Petitioner is a practical nurse, who received her technical training in the hospital of respondent. Following her graduation she was employed as a practical nurse for a brief period by respondent. She thereafter obtained other employment but returned to the employ of respondent in May 1963, approximately two weeks before the fall here involved. When she returned she requested and received permission to occupy residence quarters maintained by respondent for the use of some of its employees.
The residence quarters were located in a building on the hospital grounds used in the instruction of student nurses and as living quarters for the students and some other employees. Residents were provided with maid service by the hospital, and space and equipment were provided for light cooking and laundry and for certain recreational and social *255 activities. Petitioner was charged the nominal sum of $15 per month for her living quarters, maid service and the privilege of using all of the facilities and equipment in the residence.
On May 30, 1963 petitioner worked from 7 A.M. to 3:30 P.M. and then returned to the residence quarters. After changing her clothes, she visited and chatted for a short time with other girls who were sunbathing on the roof. At approximately 4 P.M. petitioner "decided to come down and have supper." As she descended the stairs between the third and second floor en route to her room, she fell on the last four steps of the stairway and sustained the injuries for which compensation is sought.
Petitioner testified that she was on call "for additional duties or other hours," as she phrased it, "in the sense they would ask you readily if they needed you." On cross-examination, however, she stated that she "worked two shifts straight once," but "[i]t wasn't within the two-week period that I just went back." Petitioner admitted that she was free "to go any place" she desired after her daily tour of duty, and that she had no restrictions "as far as your curfew."
The judge of compensation found that "[w]hile the petitioner was not required to live at the hospital," she and others did so and "they were obviously at the service of the hospital, if required, although they were not on 24 hour duty." He found that petitioner "put herself in the position of being available for service when required, having lived at the hospital, and while she could go out at will, she didn't have to return, she could live home if she wished. This is what she was doing at the time the accident happened." He concluded that there was "an employee-employer relationship; that she did meet with a compensable accident arising out of and in the course of her employment on the date alleged.
Respondent contends that petitioner did not sustain her injuries in an accident "arising out of and in the course of employment"; that she was not performing any of the duties of her employment at the time of the accident or doing anything *256 incidental to it, and that the accident was a personal-type occurrence, disassociated from the employment, as would be likely to occur anywhere and any place that the employee happened to live, and, hence, not compensable.
Respondent argues vigorously that the current state of the law with respect to resident employees is enunciated in 1 Larson, Workmen's Compensation, § 24.40, pp. 381-382, wherein the author comments:
"When residence on the premises is merely permissive, injuries resulting from such residence are not compensable under the broad doctrine built up around employees required to reside on the premises."
Larson states that this distinction has been applied to deny compensation when "the source of injury was the burning of a bunk-house, a fall from its porch, injury going toward it, electrocution, and collapse of the hut in a high wind." Ibid., at p. 382, and cases there cited. The distinction has also been drawn to deny compensation for injuries resulting from the burning of a tent furnished to a construction crew by the employer, from the fall of an employee living on premises at his employer's request while on a staircase leading to sleeping quarters following a Christmas celebration, and for the loss of two fingers while cutting a lemon by one permitted to live on the employer's premises. Ibid., at p. 384 (1964 supp.). It is said that "[t]he theory is, of course, that when residence is mandatory, it is the constraints and obligations of the employment that subject the employee to the risk that injured him, while if the residence is optional, the employee is free to do as he pleases and there is no continuity of employment obligation of any kind during the time the employee is voluntarily sleeping in a place provided for his convenience by the employer." Ibid., at p. 382.
Petitioner was not required to reside in the residence quarters provided by respondent, nor was she within the category of those deemed "required" to reside on the premises because of the distance of employment from residential facilities or the lack of availability of accommodations elsewhere (cf. 1 *257 Larson, op. cit., p. 382), for she testified that she was within commuting distance of her home, and transportation facilities she had previously used were available. Unquestionably, she was a permissive resident-employee by choice, but it cannot be said that the comment and cases cited in Larson reflect the current state of the law in this State.
Our highest courts have consistently reiterated the legal philosophy that a broad, liberal interpretation should be given to coverage under our Workmen's Compensation Act. Cuna v. Board of Fire Commissioners, Avenel, 42 N.J. 292, 298 (1964); Diaz v. Newark Industrial Spraying, Inc., 35 N.J. 588, 590 (1961); Volek v. Borough of Deal, 83 N.J. Super. 58, 63 (App. Div. 1964). The statute has been described as "humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense." Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 586 (1959). See, also, Ricciardi v. Damar Products Company, 45 N.J. 54 (1965).
We have been instructed that it is our obligation in the course of determining whether an accidental injury is one "arising out of and in the course of employment" to make a "conscientious endeavor to maintain a liberally just line between those accidental injuries which may be said to have had some work connection and those which may be said to have been unrelated to the employment." Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 587 (1959). Referring to the judicial discharge of this obligation, Mr. Justice Jacobs in that case said:
"* * * In drawing that line the courts have not rested on any legalistic formula but have sought to apply the comprehensive legislative compensation plan fairly and justly to the particular facts presented. See Green v. DeFuria, 19 N.J. 290 (1955); Gargiulo v. Gargiulo, 13 N.J. 8 (1953); Saintsing v. Steinbach Company, 1 N.J. Super. 259 (App. Div. 1949), affirmed 2 N.J. 304 (1949). Cf. Stout v. Sterling Aluminum Products Co., 213 S.W.2d 244, 246 (Mo. Ct. App. 1948):
There are many attempted definitions in the various cases of the meaning of the words `arising out of and in the course of his employment,' but there is not, and in the very nature of things cannot be, any set formula that applies in all cases, and therefore every case *258 involving the application of that requirement must be decided upon its own particular facts and circumstances and not by reference to some formula'" (at p. 587)
Although our research does not reveal any case in this State allowing compensation for injuries sustained by a resident employee while using residence facilities furnished by the employer, when the employee was not on duty or on call, there is no rational foundation for a distinction between such a case and those in which compensation has been awarded an employee for injuries suffered while engaged in recreational activities or using recreational and other facilities sponsored or supplied by the employer. Our courts have frequently approved awards for injuries sustained by employees on and off the employer's premises when not engaged in the performance of employment duties or on call, so long as the activity leading to the injury was "reasonably incidental to the employment." These decisions, although the language employed varies, are all predicated on the "mutual benefit doctrine." See Cuna v. Board of Fire Commissioners, Avenel, 42 N.J. 292, 305-306 (1964) and cases there cited.
In Saintsing v. Steinbach Company, 1 N.J. Super. 259 (App. Div. 1949), affirmed 2 N.J. 304 (1949), an employer provided free smallpox vaccinations for its employees and urged, but did not direct, them to be vaccinated to guard against a threatened epidemic. One of its employees was disabled from her vaccination and brought a compensation action. The Bureau (now Division) of Workmen's Compensation found that "the vaccination service furnished at the employer's premises was a mutually beneficial facility comparable to its medical clinic, cafeteria and other employee facilities incidental to the employment and that insofar as it aided in the prevention of smallpox within the employee group it protected the employer against possible disastrous business consequences." On appeal the Appellate Division held that the employee's disability was the result of an accident arising out of and in the course of employment and stated:
*259 "We have concluded that the activity was mutually beneficial, that the risk was reasonably incident to the employment and that the petitioner's injury resulted from an untoward event or accident arising out of and in the course of her employment within the broad and remedial intendment of the Workmen's Compensation Act." (1 N.J. Super. 260, at p. 264 (1949))
In Tocci v. Tessler & Weiss, Inc., supra, 28 N.J. 582, injuries sustained by an employee while engaged at the employer's premises in a customary luncheon-hour softball game, which the employer not only permitted but also encouraged by supplying the necessary equipment, were held compensable as "arising out of and in the course of the employment."
An award to an employee who was injured while playing softball in an industrial league after working hours was approved in Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961). The rationale of recovery in the cited case was described by Mr. Justice Schettino in Cuna v. Board of Fire Commissioners, Avenel, supra, 42 N.J. 292, in the following language:
"The rationale behind the allowance of recovery in Complitano was the `mutual benefit doctrine.' That rule allows compensation where the employer as well as the employee receives benefits from the recreational activity. The factual complex of Complitano led to the conclusion that the employer as well as the employee was receiving a `clear and substantial benefit.'" (at p. 305)
In Rice v. Pharmaceuticals, Inc., 65 N.J. Super. 579 (App. Div. 1961), an employee sustained injuries in the parking lot of the employer's building at the end of the work day while on a return trip to the building to obtain a discarded can for the use of a female coemployee, who was a member of the injured employee's car pool. The court held that "[u]nder the circumstances, the petitioner's injury on the parking lot, which was in all respects a part of the locus of employment, and before he had ever departed therefrom, was reasonably incidental to the employment and compensable." (at p. 584) The court stated:
*260 "Since the employer permitted its employees to take home for their use its discarded cans, such permission redounded to the benefit of the employer at least in the form of improved industrial relations. The giving of the can for the employee's home use necessarily implied its removal from the building to the automobile in which the employee would ride homeward. That a male employee would be asked by a female coemployee, a member of his car pool, to do her the favor of carrying the can to the car and that he would perform that courtesy, is an expectable incident of the co-employment relationship." (at p. 583)
Injuries sustained by an employee injured in the employer's parking lot when struck by an automobile driven by a coemployee were held to have been sustained "in the course of employment" in Konitch v. Hartung, 81 N.J. Super. 376 (App. Div. 1963), certification denied 41 N.J. 389 (1964). In that case it was said:
"There can be no question that when defendant drove to work and entered the parking lot provided by the company, he was in the course of employment. An accident arises `in the course of employment' when it occurs within the period of employment and at a place where the employee may reasonably be. 1 Larson, op. cit., § 14, p. 193 and § 15.14, p. 200. Our courts have held that the employer's parking lot is part of the employment premises, and an employee entering or using the lot in the circumstances here present is in the course of employment." (at pp. 382-383)
In Cuna v. Board of Fire Commissioners, Avenel, supra, 42 N.J. 292, a volunteer fireman injured while playing softball on the fire company team was held entitled to compensation because the respondent obtained substantial benefits from the esprit de corps of the members of the fire company built thereby, the teamwork fostered by the game, and the public relations benefit of gaining community support for the fire company. The court found that the "mutual benefit doctrine" applied to the case. (at p. 306)
The application of the "mutual benefit doctrine" may also be noted in Ricciardi v. Damar Products Company, 45 N.J. 54 (1965) (employee killed in automobile accident while returning home from a picnic sponsored by her employer); Harrison v. Stanton, 26 N.J. Super. 194, 199 (App. Div. *261 1953), affirmed 14 N.J. 172 (1954) (funeral director's employee injured while driving a babysitter home after he and his wife had returned from a social function deemed to have been a promotional incident of this employer's business), and Kelly v. Hackensack Water Co., 10 N.J. Super. 528 (App. Div. 1950), opinion after remand 23 N.J. Super. 88 (App. Div. 1952) (employee killed during a company outing when he fell into a ravine on a return walk from the picnic park to the excursion boat).
Although the petitioner in the instant case was not performing any of her duties as a practical nurse and I find that the evidence does not establish that she was "on call," she was, as respondent concedes, "at a location where she was expected to be" when injured. Residence quarters provided for employees by the employer are, like parking lots provided for employees by the employer, "a part of the locus of employment" and an injury sustained by an employee while using such residence facility properly, reasonably and in the manner contemplated by the employer is "reasonably incidental to the employment and compensable." Cf. Rice v. Pharmaceuticals, Inc., supra, 65 N.J. Super., at p. 584.
The residence facilities furnished to petitioner by respondent-hospital were mutually beneficial, for it not only made nursing employees such as petitioner more immediately available for service if required, but provided the additional "clear and substantial benefit" of rendering employment by the hospital more attractive to those whose nursing skills are in desperately short supply in the community and in promoting employee morale and good will.
The judgment entered in the Division of Workmen's Compensation is, accordingly, affirmed.