184 N.J. Super. 1 (1982)
445 A.2d 40
JANE DOE (FICTITIOUS), PLAINTIFF-APPELLANT,
v.
SAINT MICHAEL'S MEDICAL CENTER OF NEWARK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1982.
Decided March 11, 1982.
*3 Before Judges BISCHOFF, KING and POLOW.
Noah M. Burstein argued the cause for appellant (John J. Sciacca, attorney).
Stephen O. Mortenson argued the cause for respondent (Connell, Foley & Geiser, attorneys).
The opinion of the court was delivered by KING, J.A.D.
This action was brought by plaintiff against Saint Michael's Medical Center of Newark to recover common-law damages for injuries sustained as a result of a sexual attack and robbery on July 22, 1978, a Saturday morning. Plaintiff, a medical technologist employed at the hospital, was attacked in her room on the third floor of the hospital dormitory, the oldest building in the Saint Michael's medical complex located on Central Avenue in downtown Newark. Plaintiff's claim was predicated on the alleged lack of security at the facility.
Plaintiff had occupied the room for several years under a written lease and had paid $54.16 a month rent which was deducted from her biweekly pay checks.[1] She was not required *4 to live in the dormitory as a condition of employment. The parties stipulated that she lived in the dormitory "because at the time she got the job [in 1974] she did not know where else to live, having no immediate friends or relatives in this area and being unfamiliar with the area at the time she came here. She couldn't then or at any other time have chosen or had the resources to live elsewhere." Only hospital employees could live in the dormitory building. Plaintiff was not on duty or on call the Saturday of the attack. She usually worked in her technologist job Monday through Friday but had worked on Saturday on occasion.
This appeal is taken from a dismissal of plaintiff's complaint following defendant's motion before trial because her exclusive remedy against defendant was under the Workers' Compensation Act.
If the circumstances of plaintiff's injury entitled her to a workers' compensation remedy, she is barred under N.J.S.A. 34:15-8 from bringing a civil action. See Seltzer v. Isaacson, 147 N.J. Super. 308, 313 (App.Div. 1977). The question in this case is whether plaintiff's injury arose "out of and in the course of employment" under N.J.S.A. 34:15-7. Even though in this case the injured employee is resisting compensability, presumably in order to obtain a larger recovery in a civil action, we are bound by the principle requiring liberal interpretation of the Workers' Compensation Act in order to afford a certain remedy. "Consistency requires us to use the same legal yardstick...." Brooks v. Dee Realty Co., Inc., 72 N.J. Super. 499, 508 (App.Div. 1962).
In holding that plaintiff's accident was compensable the Law Division judge relied primarily on Barbarise v. Overlook Hospital Ass'n, 88 N.J. Super. 253 (Cty.Ct. 1965), which involved a similar situation. In that case a petition for workers' compensation *5 benefits had been filed by a nurse who was injured when she fell on stairs when returning from sun bathing on the roof of the residence hall provided by her employer. She was not required to live in this residence, which her employer had provided for some of its employees. At the time of her injury she was off duty and not on call, but her employer had been known to ask an employee to work after hours if the need arose. In affirming an award of compensation to the employee the court found no basis for distinguishing this case from other cases which had supported compensability for injuries suffered by an employee while engaged in recreational activities sponsored by the employer. See Ricciardi v. Damar Products Co., 45 N.J. 54 (1965) (petitioner killed while returning home from company picnic); Cuna v. Avenel Bd. of Fire Com'rs, 42 N.J. 292 (1964) (volunteer fireman injured playing on fire company softball team); Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), rev'g on dissent 63 N.J. Super. 444, 456 (App.Div. 1960) (employee injured while playing on company-sponsored softball team). Even though the employees in these cases were not on duty or on call, the injuries were compensable "so long as the activity leading to the injury was `reasonably incidental to the employment.'" Barbarise, supra, 88 N.J. Super. at 258. That court analyzed a number of cases in which courts had, in one form or another, applied the "mutual benefit doctrine" in determining whether an injury was work-related. Id. at 258-261. Under this doctrine an injury will be found compensable where both the employer and the employee receive benefits from the activity in which the employee was engaged when the injury occurred. See, also, Strzelecki v. Johns-Manville, 65 N.J. 314, 317-320 (1974), where the employee was killed in an auto accident on the way to study for graduate courses encouraged and paid for by the employer.
Applying these same concepts, the Barbarise court reasoned:
Although the petitioner in the instant case was not performing any of her duties as a practical nurse and I find that the evidence does not establish that she was "on call," she was, as respondent concedes, "at a location where she was *6 expected to be" when injured. Residence quarters provided for employees by the employer are, like parking lots provided for employees by the employer, "a part of the locus of employment" and an injury sustained by an employee while using such residence facility properly, reasonably and in the manner contemplated by the employer is "reasonably incidental to the employment and compensable." Cf. Rice v. Pharmaceuticals, Inc., supra, 65 N.J. Super. [579] at 584.
The residence facilities furnished to petitioner by respondent-hospital were mutually beneficial, for it not only made nursing employees such as petitioner more immediately available for service if required, but provided the additional "clear and substantial benefit" of rendering employment by the hospital more attractive to those whose nursing skills are in desperately short supply in the community and in promoting employee morale and good will. [88 N.J. Super. at 261.]
We find this reasoning equally applicable to the present case. The Supreme Court decisions in Complitano, supra, where compensation was awarded to an employee injured while playing softball in a league sponsored by the employer, and Ricciardi, supra, where benefits were awarded when an employee was killed on the way home from a company picnic, support the conclusion that the positive effect on employee morale and good will is itself a substantial benefit to the employer. Also in accord is the more recent Mikkelsen v. N.L. Industries, 72 N.J. 209 (1977), where the employee was injured while walking in a parking lot after leaving a union meeting held to ratify a collective bargaining contract. The meeting was held at an inn across the town from the employer's plant. We believe that Saint Michael's in this case was benefitted by furnishing some of its employees with residence facilities. Moreover, it may be assumed that the existence of such facilities rendered the position more attractive to plaintiff, since she was relieved of the necessity of finding housing in an area with which she was unfamiliar.
The leading authority points out that compensability uniformly obtains when the employee is required to live on the portion of the employer's premises where the accident happens. 1A Larson, Workers Compensation Law, § 24.30 at 5-183 (1979). This is the so-called "bunkhouse" rule. The cases are not uniform where residence on the employer's premises is permitted but not required as a condition of employment. Larson, *7 supra, § 24.40 at 5-194. "The better view" upholds compensability, especially where there may be "no reasonable alternative ... or the lack of availability of accommodations elsewhere." Id. at 5-197. Larson places New Jersey among the jurisdictions following the "better view," apparently on the basis of the Barbarise case. Id. at 5-196, n. 9. Certainly Saint Michael's Hospital's dormitory benefitted the employer's interest by providing modest-cost, nearby housing which encouraged prompt and regular attendance at work and contributed to maintaining full employment in technically skilled jobs. At least initially, petitioner, new to the area, may have had little alternative in Central Newark to this modest-cost dormitory housing provided by her employer. Other authorities hewing to a similar view where optional housing is provided by the employer include Hunley v. Industrial Commission, 133 Ariz. 187, 549 P.2d 159 (Sup.Ct. 1976) (injured on day off on apartment steps at south rim of the Grand Canyon); Aubin v. Kaiser Steel, 185 Cal. App.2d 658, 8 Cal. Rptr. 497 (D.Ct.App. 1960) (killed while starting recreational trip from dormitory in desert area); Broman v. A. Brassard, Inc., 35 A.D.2d 142, 314 N.Y.S.2d 850 (App.Div. 1970) (injured while off work but on premises); Gilbert v. Maheux, Me., 391 A.2d 1203 (Sup.Jud.Ct. 1978) (reliance on Barbarise; hotel maid voluntarily living in employer's hotel injured during leisure time); Arnold v. State, 94 N.M. 278, 609 P.2d 725 (Ct.App. 1980) (employee of facility for retarded voluntarily living on premises at $10 a week rent was sexually attacked during off hours).
Employing the "positional risk" or "but for" test, under which "an injury arises out of employment if the employee's duties and conditions of employment bring him to the place where he is injured at the time of the occurrence," also leads to the conclusion that plaintiff's injury was compensable. Briggs v. American Biltrite, 74 N.J. 185, 189, n. 1 (1977) (special errand exception to "going and coming" rule). If not for her employment, she would not have been in the place where she was injured because she would otherwise have had no right to live there.
*8 In view of our finding of compensability, we also reject plaintiff's second claim that she has a common-law cause of action for breach of duty under the implied warranty of habitability because of her alleged status as a tenant. See Trentacost v. Brussel, 82 N.J. 214, 225-228 (1980) (tenant owed protection against reasonably foreseeable criminal activity). We assume, without squarely deciding, that plaintiff was a tenant for public liability purposes. Cf. Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 94 (1980). We reject plaintiff's contentions that her alleged status as a tenant allowed her to circumvent the policy of exclusive remedy. Plaintiff essentially argues for a cause of action under the "dual-capacity" doctrine, where "an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." 2A Larson, Workers' Compensation Law, § 72.80 at 14-112 (1976). The dual capacity issue has most frequently arisen when the employer's second capacity is that of an owner. 2A Larson, op. cit., § 72.80 at 14-113. In this context Larson states that "it can at least be argued that the liability of the owner of land is different from that of an employer working on the premises. The legal doctrines governing the responsibilities of landowners to different classes of persons entering upon the land are ancient and distinctive...." 2A Larson, op. cit., § 72.80 at 14-117. However, the dual capacity doctrine has not met with wide approval, even when the employer clearly has independent obligations arising from his status as owner. See Id., § 72.80 at 14-113 to 14-117 and Supp. (1981) at 194-201. For example, in State v. Purdy, 601 P.2d 258 (Alaska Sup.Ct. 1979), a state employee who had received workers' compensation benefits filed suit against the state for the failure to properly maintain the highway on which the accident occurred. In holding that the subsequent suit was barred by the exclusive remedy principle, the court stated:

*9 Whatever frail vitality the dual capacity doctrine has in other jurisdictions, we do not think that it warrants adoption here. To do so might undermine extensively the policy sought to be achieved by the workmen's compensation act. There are endlessly imaginable situations in which an employer might owe duties to the general public, or to non-employees, the breach of which would be asserted to avoid the exclusive liability provision of our statute. It would be an enormous, and perhaps illusory, task to draw a principled line of distinction between those situations in which the employee could sue and those in which he could not. The exclusive liability provision would, in any event, lose much of its effectiveness, and the workmen's compensation system as a whole might be destabilized. For these reasons, and because of the persuasiveness of case law from other jurisdictions rejecting it, we reject the dual capacity doctrine as the law of this state. [601 P.2d at 260]
Nor has the so-called "dual-capacity" doctrine thrived in New Jersey. In Taylor v. Pfaudler Sybron Corp., 150 N.J. Super. 48 (App.Div.), certif. den. 75 N.J. 20 (1977), the claimant was injured while working for the Ionac Chemical Company, a division of Sybron Corporation. He recovered compensation benefits and then brought a common law action against another division of Sybron, the Pfaudler Company, alleging negligence in the manufacture of a vat which caused his injury. Recovery was denied because of the "important legislative policy immunizing an employer from common law liability." Id. at 52. See, also, Jackson v. New Jersey Mfrs. Ins. Co., 166 N.J. Super. 448 (App.Div.), certif. den. 81 N.J. 330 (1979), and Brooks v. New Jersey Mfrs. Ins. Co., 170 N.J. Super. 20 (App.Div.), certif. den. 81 N.J. 413 (1979), both cases in which common-law tort claims against the employer's workers' compensation insurance carrier failed.
The Law Division judge dismissed plaintiff's action. Rather than a dismissal, the action should have been transferred to the Division of Workers' Compensation. R. 1:13-4(a); Townsend v. Great Adventure, 178 N.J. Super. 508, 517 (App.Div. 1981). We modify the order of dismissal by the trial judge and order the transfer of the claim to the Division. The judgment of the Law Division, as so modified, is affirmed.
NOTES
[1] The lease read:

It is agreed that I will render payment in the amount of $54.16 on or before the 1st of each month for the rental, one month in advance, of the accomodations described above.
All rental payments must be submitted via check or money order ONLY.
I understand that an initial key deposit (security) of $50.00 is required before I take occupancy; this deposit will be returned upon termination of the rental agreement, pending inspection of my quarters by the housing manager or his designee and is subject to deductions for expenses incurred by the hospital as a result of my residence. It is understood that this lease may be terminated, giving thirty (30) days notice by either party to this agreement, and that I will return all keys to the area and my living quarters at that time.
It is expressly understood that I am responsible for the cleanliness of my living quarters, that I must furnish my bed linens and that I have read and agree to the housing regulations set forth by the hospital Administration, which I hereby understand are incorporated into this agreement.