IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30754
Summary Calender

ALVIN J HOTARD

Plaintiff - Appellant

V.

DEVON ENERGY PRODUCTION CO L P

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
No. 6:07-CV-1476

Before DAVIS, GARZA, and PRADO, Circuit Judges.

PER CURIAM:[*]

Alvin Hotard sued Devon Energy Production Company, L.P., ("Devon") to recover damages for injuries he suffered while working as a mechanic on an offshore platform operated by Devon. The injuries arose after Hotard was bitten by a spider while sleeping in his bunk on the platform. At the time of the incident, Hotard was employed by Wood Group Production Services ("Wood Group"). Wood Group is in the business of supplying laborers for work in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

oilfield industry. The district court granted summary judgment in favor of Devon on the grounds that Hotard was Devon's "borrowed employee," which grants Devon tort immunity under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(a), and that Hotard was in the course and scope of his employment at the time of the incident so as to fall within the LHWCA. Finding no error, we affirm.

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

To determine borrowed-employee status, we consider nine factors:

(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

Brown v. Union Oil Co. of Cal., 984 F.2d 674, 676 (5th Cir. 1993). Whether borrowed-employee status exists is a question of law for the district court, though in some cases factual disputes must be resolved before the district court can make this determination. See Melancon v. Amoco Prod. Co., 834 F.2d 1238,

1245 n.13 (5th Cir. 1988).

Here, the district court found that all factors favor borrowed-employee status. While working on the platform Hotard was supervised by David Hargrave, a Devon employee. Hargrave and another Devon mechanic gave Hotard a "walk through" orientation to the job when he first arrived. According to Hotard's own testimony, he had no contact with Wood Group while on the platform. Hotard performed Devon's work. He took instructions from Hargrave regarding what to work on and where to perform the work. For almost one year Hotard worked "7 & 7" shifts for Devon, meaning that he worked on the platform for seven days followed by seven days off. During the seven days he was on the platform, he worked a twelve hour shift. Devon furnished the workplace, transportation, food, lodging, and most tools for Hotard, although he brought his own transportable tools such as hard hats. Devon had the right to discharge Hotard from employment on its platform, but Devon could not terminate Hotard's relationship with Wood Group. Regarding compensation, Devon supervisors approved time sheets and paid Wood Group an hourly rate for Hotard's work, and Wood Group issued Hotard a check.

Hotard argues that each factor at least arguably favors his contention that he was not a borrowed employee. However, our cases indicate that most factors clearly support borrowed-employee status. The second, sixth, and seventh factors indisputably indicate that Hotard was Devon's borrowed employee. Regarding the remaining factors, the fact that Hotard reported only to a Devon employee on the platform shows that Devon had control over Hotard and his work. See Melancon, 834 F.2d at 1245. Considering the length of time that Hotard worked on Devon's platform, we can conclude that he acquiesced to his working conditions. See Brown, 984 F.2d at 678 (finding that one month of work in new conditions is sufficient to show acquiescence). We do not require total severance of all connections to show termination of the relationship with the

3

original employer; the fact that Hotard had no contact with Wood Group and was supervised totally by Devon employees while on the platform is sufficient to meet this factor. See Melancon, 834 F.2d at 1246. Finally, we have held that the exact structure that existed between Hotard, Devon, and Wood Group regarding the right to discharge and obligation to pay favors borrowed-employee status. See id.

Accordingly, only the third factor—agreement, understanding, or meeting of the minds between the original and borrowing employer—conceivably supports Hotard's contention that he was not a borrowed employee. The district court found that no evidence exists of an explicit agreement between Devon and Wood Group regarding Hotard's status, but that the course of the relationship between the parties indicates that an agreement existed. Even assuming that this factor might weigh in Hotard's favor, the fact that each of the other factors support borrowed employee status is sufficient show that Hotard was Devon's borrowed employee. See Billizon v. Conoco, Inc., 993 F.2d 104, 105-06 (holding that borrowed-employee status exists where one factor is neutral, one weighs against borrowed-employee status, and the remaining seven support borrowed-employee status).

The district court also held that Hotard was in the course and scope of his employment with Devon at the time the spider bite occurred. Hotard argues that this was in error because he was sleeping in his bunk at the time of the incident, so even if he was a borrowed employee neither the LHWCA nor the Louisiana Worker's Compensation Act ("LWCA") applies.

The test for whether an employee is within the course and scope of his employment requires only that the obligations or conditions of employment create the zone of special danger out of which the injury arose. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 506-07 (1951). It is not necessary that the employee be performing an activity to benefit the employer when the

incident occurs. Id. To be outside the course and scope of employment, an employee must "go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment." Id. (internal quotation and citation omitted).

Here, Hotard suffered the spider bite while sleeping on Devon's platform, as necessitated by the typical conditions of working offshore. Although he was not actually at work at the time of the bite, it is not required that he be performing his duties when the injury occurs. Id. (holding that a worker was in the course and scope of his employment when he drowned, during his off-duty hours, while attempting to rescue someone at his employer's recreational center). Further, Hotard's contention that he could have taken a helicopter off the platform to spend the night elsewhere does not change the fact that he was on the platform, in the course and scope of his employment, when the incident occurred. In most workers' compensation cases there is conceivably something the employee could have done to avoid the incident, but this does render the employee outside the course and scope of his employment. Hotard's job created a situation that typically involved sleeping on the platform, and he would not have been bitten by the spider but for his employment with Devon. Therefore, we conclude that Hotard was within the course and scope of his employment when the incident occurred, and the LHWCA and LWCA apply.

For the above reasons, we AFFIRM the district court's order granting summary judgment.