# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-20380

JAMIE LEIGH JONES; JOSEPH DAIGLE

Plaintiffs

JAMIE LEIGH JONES

Plaintiff-Appellee

v.

HALLIBURTON CO, doing business as KBR Kellogg Brown & Root; KBR
TECHNICAL SERVICES INC; OVERSEAS ADMINISTRATIVE SERVICES
LTD; KELLOGG BROWN & ROOT SERVICES INC; KELLOGG BROWN
AND ROOT INTERNATIONAL INC; KELLOGG BROWN & ROOT LLC;
KELLOGG BROWN & ROOT S DE R L; KELLOGG BROWN & ROOT INC;
KBR INC

Defendants-Appellants

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before BARKSDALE, DeMOSS, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

This interlocutory appeal from a partial refusal to compel arbitration
concerns the arbitrability *vel non* of tort claims by an employee who, while
working at an overseas location, was allegedly gang-raped by her co-workers in
her bedroom in employer-provided housing. Halliburton Company/Kellogg

Brown & Root, and various affiliates (Halliburton/KBR), contest the denial, in part, of their motion to compel arbitration of Jamie Leigh Jones' claims concerning her alleged rape by Halliburton/KBR employees, while she was stationed at a company facility in Baghdad, Iraq. All of her claims were deemed arbitrable except for: (1) assault and battery; (2) intentional infliction of emotional distress arising out of the alleged assault; (3) negligent hiring, retention, and supervision of employees involved in the alleged assault; and (4) false imprisonment.

At issue is whether those four claims found non-arbitrable are, for purposes of Jones' employment contract, "related to [her] employment" or constitute personal injury "arising in the workplace". That contract incorporated Halliburton/KBR's dispute resolution program (DRP), which required her to arbitrate all claims brought against the company falling within the scope of related-to or workplace language. In the alternative, should the alleged rape be deemed covered by the arbitration clause, at issue is whether the doctrine of unclean hands precludes granting equitable relief of specific enforcement of that clause. AFFIRMED and REMANDED.

I.

Jones began working for Halliburton/KBR in 2004 as an administrative assistant in Houston, Texas. She alleges: while so employed, she was sexually harassed by her supervisor; and, because of this, she demanded to be moved to another department.

On 21 July 2005, Jones signed a contract with Defendant Overseas Administrative Services (OAS), a foreign, wholly-owned subsidiary of Halliburton/KBR, to be employed as clerical worker for the company in Baghdad. Paragraph 26 of this contract provided, in pertinent part:

> You . . . agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution

Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer *related to your employment*, including your termination, and any and all *personal injury claim*[*s*] *arising in the workplace*, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system.

(Emphasis added.) (Jones' initials appear at the bottom of this paragraph.) The incorporated DRP, in turn, provides:

"Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan or by an agreement to resolve Disputes under the Plan . . . including, but not limited to, any matters with respect to . . . any *personal injury allegedly incurred in or about a Company workplace.*

(Emphasis added.) (As discussed *infra*, although the employment contract uses "arising in the workplace", the incorporated DRP uses "incurred in *or about* a company workplace". (Emphasis added.))

Jones' job assignment placed her in the United States Army's Central Command Area of Operations, located in the "Green Zone", a well-known area of Baghdad. The Green Zone is a ten-square-kilometer area that was initially the center of the Coalition Provisional Authority after the Iraqi invasion, and continues to remain the center of the international presence in the city.

Four days after signing her employment contract, Jones arrived in the Green Zone on 25 July 2005 and began working at Camp Hope, which she alleges was under the direct control and authority, collectively, of the United States Departments of State and Defense, and Halliburton/KBR. Housing was provided for her as a term of her employment contract. Although she had initially requested, and claims she was promised, a private billeting area to be shared only with women, she was instead housed in a barracks, some distance from her workplace, occupied predominantly by male employees.

Jones alleges she was subjected to unwanted sexual harassment almost immediately. On 27 July, two days after arriving in Iraq, Jones complained to several Halliburton/KBR managers about her sexually-hostile living environment, and requested that she be housed in a safer location. She contends: no action was taken; and she was, instead, advised to "go to the spa".

The next evening, on 28 July, Jones alleges that, following a social gathering outside her barracks, at which alcohol had been consumed, she was drugged, beaten, and gang-raped by several Halliburton/KBR employees in her barracks bedroom. Allegedly, when she awoke the next morning, naked and severely bruised, she discovered one of the alleged perpetrators lying in the lower bunk in her bedroom. At that time, he allegedly admitted to having unprotected sex with her. Jones received several serious injuries as a result of the alleged incident, including torn pectoral muscles, which would later require reconstructive surgery.

Jones reported the rape to another employee and was taken to see Halliburton/KBR medical personnel. A rape kit was administered at a United States Army-run hospital. Jones alleges Halliburton/KBR subsequently mishandled the rape kit. She further alleges: after her rape-kit procedure was performed, she was placed under armed guard in a container and not permitted to leave; and, despite repeated requests to be allowed to do so, she was denied access to a telephone to contact her family, until she convinced one of her guards to allow her to telephone her father.

Additionally, Jones alleges she met with Halliburton's human resources personnel and her direct supervisor following her physical examination, where she was interrogated for several hours. She contends her KBR supervisors gave her two options: to stay and "get over it"; or to return home without the "guarantee" of a job on return. Jones' father was eventually able to enlist Congressional assistance to secure her return to the United States.

Initially, Jones filed a complaint with the Equal Employment Opportunity Commission. It conducted an investigation and determined: she had been sexually assaulted by one or more employees; physical trauma was apparent; and Halliburton/KBR's investigation had been inadequate.

In February 2006, Jones filed a demand for arbitration against Halliburton/KBR, claiming: negligence, negligent undertaking, and gross negligence in relation to the claimed sexual harassment and assault. She later amended the demand to include claims under Title VII and the Texas Labor Code. Additionally, she filed for, and received, workers' compensation benefits under the Defense Base Act, discussed *infra*.

Upon retaining new counsel, Jones filed the instant action, based on the same claims, in district court in May 2007 against: Halliburton/KBR and its various affiliates; the United States; and individual defendants, including her first supervisor in Houston, the alleged perpetrator she found lying in her bedroom, and several "John Doe Rapists". (Jones' husband was named as a plaintiff; amended complaints have removed him as a party.) The action was transferred to another district in Texas in July 2007; Jones non-suited the United States that September; and the individual defendants have not made an appearance.

Jones' Fourth Amended Complaint asserted claims for: negligence (which encompassed the above-described claim, that the district court deemed non-arbitrable, for the negligent hiring, retention, and supervision of the employees involved in the alleged assault); negligent undertaking; sexual harassment and hostile work environment under Title VII; retaliation; breach of contract; fraud in the inducement to enter the employment contract; fraud in the inducement to agree to arbitration; assault and battery; intentional infliction of emotional distress; and false imprisonment. (Although Jones' complaint only asserted Halliburton/KBR's actions "amounted to false imprisonment", and did not

specifically present it as a claim, the district court confirmed at a hearing that Jones did intend to assert a false-imprisonment claim; accordingly, it considered the arbitrability of that claim as well.) She contended Halliburton/KBR was vicariously liable for the torts committed by its employees.

In November 2007, Halliburton/KBR moved to compel arbitration of Jones' claims and stay the proceedings. In March 2008, the district court heard oral argument on that motion.

That May, in a thorough and well-reasoned opinion and order, the district court granted in part and denied in part Halliburton/KBR's motion. For the reasons that follow, it compelled arbitration for all claims, except: (1) assault and battery; (2) intentional infliction of emotional distress arising out of the alleged assault; (3) negligent hiring, retention, and supervision of employees involved in the alleged assault; and (4) false imprisonment.

In so holding, the district court concluded there was a valid agreement to arbitrate, rejecting Jones' contentions that: there was no meeting of the minds; the arbitration clause was fraudulently induced; the provision was contrary to public policy; and enforcing the agreement would be unconscionable. It also rejected Jones' alternative contention that, pursuant to the equitable doctrine of unclean hands, the arbitration agreement should not be enforced.

Having decided the arbitration agreement is valid, the district court turned to whether Jones' claims fell outside the agreement's scope. After determining the public policy expressed in the Texas Arbitration Act did not govern the question of scope (as Jones had urged), the district court found that certain claims fell outside the scope of the provision. Recognizing that the arbitration provision at issue is broad, it held the four above-listed claims related to the alleged rape (assault and battery; intentional infliction of emotional distress; negligent hiring, retention, and supervision of the employees involved; and false imprisonment) "fall beyond the outer limits of even a broad

arbitration provision" and were "not related to Ms. Jones' employment". *Jones v. Halliburton Co.*, No. 4:07-CV-2719, 2008 WL 2019463, at *9 (S.D. Tex. 9 May 2008).

While noting that overseas, remote employment, such as Jones', has led to a liberal interpretation in the case law of the "scope of employment" for purposes of workers' compensation (specifically, the Defense Base Act), the district court concluded: liberal construction could not "be incorporated wholesale into the interpretation of an arbitration provision"; and, as such, the alleged rape could not be considered related to her employment for purposes of arbitration simply because it might be considered within the scope of employment for workers' compensation purposes. *Id.* at *11.

Finally, the district court held: although the arbitration provision extended to personal-injury claims "arising in the workplace", the court "d[id] not believe [Jones'] bedroom should be considered the workplace, even though her housing was provided by her employer". *Id.* at *10.

The district court ordered litigation of the four non-arbitrable claims stayed until arbitration is completed on the other claims. Those other claims were ordered to be arbitrated. This interlocutory appeal was filed in June 2008.

## II.

As is well established, pursuant to the Federal Arbitration Act (FAA), our court has jurisdiction over a district court's refusal to compel arbitration. 9 U.S.C. § 16(a)(1); *e.g.*, *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). The denial of a motion to compel arbitration is reviewed *de novo*. *E.g.*, *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).

A two-step analysis is employed to determine whether a party may be compelled to arbitrate. *Id.* First, whether the party has agreed to arbitrate the dispute is examined. This question itself is further subdivided; to determine

whether the party has agreed to arbitrate a dispute, our court must ask: "(1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement". *Id.* (citing *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). If both questions are answered in the affirmative, our court then asks whether "any federal statute or policy renders the claims nonarbitrable". *Id.* (quoting *JP Morgan Chase*, 492 F.3d at 598).

Neither party contends that a federal statute or policy would bar arbitration; accordingly, our analysis is restricted to the first step. Further, the district court held, and neither party disputes on appeal–with the exception of Jones' alternative unclean-hands contention–that there was a valid and enforceable agreement to arbitrate. As such, our inquiry focuses on the question of scope: whether the dispute in question–the alleged rape–falls within the scope of the arbitration agreement.

## A.

Paragraph 25 of Jones' employment contract states:

> This Agreement is formed in the State of Texas and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability of provision 26 below [the arbitration clause], all issues shall be governed by and construed in accordance with the Federal Arbitration Act.

Jones contends: the FAA applies only when determining whether the agreement to arbitrate is "valid" or "enforceable" as a whole; and the scope of an arbitration agreement is a distinct question that, under the terms of her employment contract, is governed by Texas law.

To the extent Jones is maintaining, as she did in district court, that the public policy in the Texas Arbitration Act (TAA), TEX. CIV. PRAC. & REM. CODE ANN. §171.001 *et seq.*, dictates her personal injury claims fall outside the scope

of the arbitration agreement, we reject her contention. Essentially, Jones contended in district court that the arbitration agreement was not enforceable for her personal-injury claims because, under Texas law, the TAA mandates that agreements to arbitrate such claims, *inter alia*, be signed by each party's lawyer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002 (instructing the TAA does not apply to "a claim for personal injury" unless "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney").

We agree with the district court's conclusion that, "to the extent . . . § 171.002 of the TAA affects the *enforceability* of the agreement, it would be preempted by the FAA". *Jones*, 2008 WL 2019463, at *7 (emphasis in original). Accordingly, and essentially for the reasons stated by the district court, we also conclude that whether Jones' claims fall outside the scope of the arbitration provision is not based on the public policy stated in the TAA.

B.

Although the public policy of the TAA does not govern the scope of the arbitration provision, our court must decide whether Jones' claims deemed non-arbitrable by the district court otherwise fall outside of the scope of the arbitration clause of the employment contract. As discussed, in this regard, the "related to" and "workplace" language comes into play. It goes without saying that there is a strong federal policy in favor of arbitration.

When determining whether a dispute is covered by the scope of an arbitration agreement, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration". *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Accordingly, our court has held: "[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not

susceptible of an interpretation which would cover the dispute at issue'". *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

1.

Halliburton/KBR first contends the dispute is covered by the arbitration agreement because the alleged incident is "related to" her employment for purposes of the employment contract's arbitration clause. This clause provides, in pertinent part: "You understand that the Dispute Resolution Program requires, as its last step, that *any and all claims* that you might have against Employer *related to your employment* . . . must be submitted to binding arbitration instead of to the court system". (Emphasis added.)

Our court has characterized similar arbitration clauses as broad and capable of expansive reach. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (noting: "courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract"). Of course, although this reach is broad, it is not unbounded. *Pennzoil* recognized that a dispute need only "'touch' matters covered by" the arbitration agreement to be arbitrable, *id.* at 1068 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)); in the same discussion, however, it defined an arbitrable dispute under a broad clause as one "having a significant relationship to the contract"–here, Jones' employment contract–"regardless of the label attached to the dispute". *Pennzoil*, 139 F.3d at 1067. It further noted: "[E]ven broad clauses have their limits". *Id.* at 1067 n.8.

a.

The case law is divided on the arbitrability, under similar arbitration clauses, of employees' claims premised on sexual assault. As noted by the

district court, the Mississippi Supreme Court held in *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116 (Miss. 2007), that plaintiff's claim against her employer for negligent hiring, supervision, and retention of her manager, who allegedly sexually assaulted plaintiff, was "unquestionably" beyond the scope of the arbitration clause at issue. *Id.* at 1121. In that action, the arbitration clause provided that all "claims, disputes, or controversies arising out of or relating to [her] . . . employment" would be resolved through arbitration. *Id.* at 1120.

Plaintiff, a restaurant employee, alleged that her manager assaulted and raped her at the restaurant during working hours. *Id.* at 1118. In addressing the question of scope, the Mississippi Supreme Court held: "[A] claim of sexual assault neither pertains to nor has a connection with [plaintiff]'s employment". *Id.* at 1121; *see also Niolet v. Rice*, No. 2008-CA-00922-COA, 2009 WL 1199114, at *2 (Miss. Ct. App. 5 May 2009) (citing *Captain D's* in noting that plaintiff's claims of assault and battery against her supervisor in an alleged sexual assault were "not directly or indirectly related to her employment" for purposes of the company's arbitration agreement because "the provision is limited to employment-related claims" and "a claim for assault and battery in no way touches upon matters covered by the agreement").

Other courts have reached similar conclusions when determining whether an employee's claims concerning sexual assault fall within the scope of an arbitration agreement. In *Hill v. Hilliard*, 945 S.W.2d 948 (Ky. Ct. App. 1996), plaintiff sued her employer and her supervisor claiming, *inter alia*, assault and battery, intentional infliction of emotional distress, and false imprisonment, after her supervisor allegedly raped her while they were attending a work-related convention. Defendants moved to dismiss and compel arbitration, contending the claims were within the scope of the arbitration provision in plaintiff's employment contract, which mandated arbitration for any controversy "arising out of employment". *Id.* at 950.

The trial court agreed with defendants; the appellate court, however, concluded that the claims of assault and battery and false imprisonment were dismissed erroneously. It held: "The only connection those torts and crimes have with [plaintiff]'s employment is that they were committed by a co-worker and occurred while on a business trip". *Id.* at 952. "The mere fact that these tort claims might not have arisen but for the fact that the two individuals were together as a result of an employer-sponsored trip cannot be determinative. What [the supervisor] is accused of doing is independent of the employment relationship." *Id.*

The scope of that arbitration provision was, of course, more narrow than the one at issue, yet the result is no less valid for broadly-construed arbitration claims: in most circumstances, a sexual assault is independent of an employment relationship. *See Abou-Khalil v. Miles*, No. G037752, 2007 WL 1589456, at *2 (Cal. Dist. Ct. App. 4 June 2007) (unpublished) (noting that claims of intentional infliction of emotional distress, assault, and battery "do not normally arise out of the employment context, in that they would be actionable even if plaintiff did not work with defendant" and that "sexual assault is not normally within the course and scope of employment"); *cf. Tolliver v. Kroger Co.*, 498 S.E.2d 702, 713 (W. Va. 1997) (determining, in an action involving whether an assault and battery claim fell within the scope of the company's collective bargaining agreement for purposes of resolving the conflict through grievance procedures, that "[a]ssault and battery conduct is not a part of, nor a condition of employment").

On the other hand, some courts have held sexual-assault claims do fall within the scope of arbitration agreements similar to the one at hand. For example, the Southern District of New York held recently that, for purposes of arbitration, a sexual-assault claim was "related to" plaintiff's employment when the assault was committed by a member of her company's upper management,

12

occurred at a work conference attended by plaintiff as part of her responsibilities for the company, and contributed to an alleged pattern of sexual harassment that had occurred at work. *Forbes v. A.G. Edwards & Sons, Inc.*, No. 08-CV-552, 2009 WL 424146, at \*8 (S.D.N.Y. 18 Feb. 2009). In the instant action, however, the alleged sexual assault occurred after hours, when Jones was off duty and in her bedroom.

Likewise, in *Barker v. Halliburton Co.*, 541 F. Supp. 2d 879 (S.D. Tex. 2008), discussed and disagreed with by the district court in the instant action (but relied upon as primary authority by the Dissent), the court examined the same arbitration language as in this action and concluded: falling within the scope of the arbitration provision were plaintiff's claims of negligence, negligent undertaking, sexual harassment and hostile work environment, retaliation, fraud, and intentional infliction of emotional distress, arising from, *inter alia*, an alleged sexual assault by a State Department employee while in plaintiff's living quarters in Iraq. It grounded this conclusion on plaintiff's vicarious-liability theories being "predicated on the failure of the Halliburton defendants' employees to follow company policies regarding, among other things, sexual harassment", *id.* at 887, and on her negligent-undertaking claims alleging that Halliburton "negligently undertook to provide proper training, adequate and sufficient safety precautions . . . , [and] adequate and sufficient policies and procedures in the recruitment, training and placement of personnel in Iraq", *id.*

In so holding, the district court in *Barker* commented on the unique nature of plaintiff's work environment, noting that, for overseas employees, there is no bright line between work and leisure time. *Id.* Citing *O'Keeffe v. Pan American World Airways, Inc.*, 338 F.2d 319, 322 (5th Cir. 1964), a case involving the reach of workers' compensation under the Defense Base Act, it ruled that, for overseas employees stationed in remote locations, the "scope of the employment

agreement and its arbitration clause" encompasses incidents that occur outside the work environment. *Barker*, 541 F. Supp. 2d. at 887-88.

The district court's disagreement in this action with the above-described decision in *Barker* is sound: "Just because an assailant's actions happen to be in violation of his employer's policies, and those policies also govern plaintiff's behavior, does not necessarily render the assault related to plaintiff's employment for purposes of arbitration". *Jones*, 2008 WL 2019463, at *10. It may be (and, as the Dissent also recognizes at 4 note 1, Jones will have to so prove, of course, to prevail on her vicarious-liability claim) that the alleged perpetrators were acting in ways that related to *their* employment because, in assaulting Jones, they were violating company policies. But the *perpetrators'* conduct concerning company policies does not explain how *Jones* was acting in any way related to her employment by being the alleged victim of a sexual assault.

Further, in the instant action, unlike in *Barker*, Jones has claimed Halliburton/KBR is vicariously liable for the assault. This distinction with the *Barker* decision, coupled with our concluding that the district court in this action properly analyzed and deemed as non-arbitrable claims that overlap with those analyzed in *Barker* (negligence and intentional infliction of emotional distress), strengthens our holding that Jones' claims were beyond the scope of the arbitration clause regarding the "related to" portion.

b.

The district court's reference in *Barker* to the "scope of employment" in the context of workers' compensation merits further discussion. As noted by that court, as well as by Halliburton/KBR in this action, Supreme Court and Fifth Circuit jurisprudence has established a liberal construction for the term "course and scope of employment" for purposes of workers' compensation under the

Defense Base Act, 42 U.S.C. §§ 1651-54 (provides workers' compensation for many employees stationed outside of the United States).

Halliburton/KBR contends that this broad construction in the workers' compensation context provides support that, for purposes of the arbitration provision, Jones' claims are "related to" her employment. Indeed, in order to receive workers' compensation for her injuries, Jones acknowledged that they had been sustained in the course and scope of her employment.

In *O'Keeffe v. Pan American World Airways* (1964), our court noted that, for employees working under the Defense Base Act, "[p]ersonal activities of a social or recreational nature must be considered as incident to the overseas employment relationship" because these employees work "far away from their families and friends, in remote places where there are severely limited recreational and social activities, [and] are in different circumstances from employees working at home". 338 F.2d at 322. Our court noted that Congress had evinced a desire for the Defense Base Act to be "liberally construed in conformance with its purpose, and in a way that avoids harsh and incongruous results", and to establish the same finality for the compensation decisions of deputy commissioners as had been established with the Longshoremen's and Harbor Workers' Compensation Act . *Id.*

The case law supports a conclusion that the liberal construction of "scope of employment" for purposes of workers' compensation is not necessarily the same standard to be applied when construing an arbitration provision with similar language. In *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506 (1951), the Court analyzed the language of the Longshoremen's and Harbor Workers' Compensation Act (into which the Defense Base Act was incorporated), which authorizes payment of compensation for "accidental injury or death arising out of and in the course of employment". 33 U.S.C. § 902(2). It noted: "Workmen's compensation is not confined by common-law conceptions of scope

of employment". *O'Leary*, 340 U.S. at 506. In explaining how to decide whether an employee can recover under the Act, the Court stated: "The test of recovery is not a causal relationship between the nature of employment of the injured person and the accident. . . . All that is required is that the obligations or conditions of employment create the zone of special danger out of which the injury arose". *Id.* at 506-07 (internal quotation marks and citation omitted); *see also Hotard v. Devon Energy Prod. Co., L.P.*, 308 F. App'x 739, 742 (5th Cir. 2009) (unpublished) (citing *O'Leary* in holding that an employee was entitled to workers' compensation for a spider bite suffered while sleeping in a bunk on his employer's offshore oil rig because the conditions requiring sleeping there created the "zone of special danger" out of which the injury arose).

Indeed, as noted by the district court in the instant action, the dissent in *O'Leary* was concerned that, under this standard, an employer's liability for workers' compensation would follow "from the mere relationship of employer and employee". *O'Leary*, 340 U.S. at 509 (Minton, J., dissenting). The arbitration standard at issue here, while broadly construed, still requires, *inter alia*, a dispute "related to" a plaintiff's employment to have "a significant relationship to the contract". *Pennzoil*, 139 F.3d at 1067. The Supreme Court has noted, in the context of ERISA preemption: "If 'relate to' were taken to extend to the furthest stretch of its indeterminancy", the phrase would not have much limiting power because "[r]eally, universally, relations stop nowhere". *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

In interpreting the arbitration provision at issue, and in the light of the above-discussed precedent, we conclude that the provision's scope certainly stops at Jones' bedroom door, as further discussed *infra*. As such, it was not contradictory for Jones to receive workers' compensation under a standard that allows recovery solely because her employment created the "zone of special

16

danger" which led to her injuries, yet claim, in the context of arbitration, that the allegations the district court deemed non-arbitrable did not have a "significant relationship" to her employment contract.

c.

Halliburton/KBR also points to several workers' compensation cases to maintain that, because Jones lived in employer-provided housing, the alleged incident occurring there was related to her employment. It contends decisions such as *Barbarise v. Overlook Hospital Ass'n*, 211 A.2d 817 (N.J. Super. Ct. 1965), and *Doe v. St. Michael's Medical Center of Newark*, 445 A.2d 40 (N.J. Super. Ct. 1982), provide support for holding that an incident occurring in employer-provided dormitories "arose out of and in the course of employment".

In *Doe*, plaintiff, a medical technologist employed by the defendant hospital and living in the hospital dormitory, was found to have received an injury arising "out of and in the course of employment", entitling her to workers' compensation, after she was attacked in her dormitory room. *Doe* stated that the leading authority on workers' compensation law had determined: "[C]ompensability uniformly obtains when the employee is required to live on the portion of the employer's premises where the *accident* happens". *Doe*, 445 A.2d at 43 (citing 1A Arthur Larson, Larson's Workers Compensation Law, § 24.30 at 5-183 (1979)) (emphasis added).

Needless to say, an "accident" is not at issue here. In any event, as discussed, the scope of employment may be more broadly construed under a workers' compensation provision than when interpreting an arbitration provision. Even within the context of workers' compensation, however, simply living in employer-provided housing does not mean an injury occurring in that housing necessarily arises "out of and in the course of employment".

Obviously, changes in this area of the law have occurred in the 30 years since the 1979 edition of the above-referenced authority which *Doe* paraphrases.

A recent edition summarizes the current state of the law with regard to workers' compensation for resident-employees as follows:

> Injuries to employees required to live on the premises are generally compensable if one of the two following features is present: either the claimant was *continuously on call*, or the source of injury was a *risk distinctly associated with the conditions under which the claimant lived* because of the requirement of remaining on the premises.

2 ARTHUR LARSON & LEX. K. LARSON, LARSON'S WORKERS' COMPENSATION LAW, § 24.01, 24-02 (2009) (emphasis added).

Concerning the first of the two features, Jones was not continuously on call. She was off-duty at the time of the incident.

As for the second feature (risk distinctly associated), courts have held that, for workers' compensation purposes, an injury was not causally related to employment if this aspect of the claim was not satisfied. For example, in *Littles v. Osceola Farms Co.*, 577 So. 2d 657 (Fla. Dist. Ct. App. 1991), the court denied death benefits to an employee's widow because it found the employee's death, which occurred when he was fatally stabbed by the woman with whom he had developed an amorous relationship while recovering at a medical facility from on-the-job injuries, resulted from an event that was "purely personal to the employee", and was "not a risk 'distinctly associated' with his stay at the medical facility". *Id.* at 658 (quoting *Mecca Farms, Inc. v. Espino*, 414 So. 2d 572, 574 (Fla. Dist. Ct. App. 1982)).

Of course, Halliburton/KBR does not contend that the source of Jones' injury–the alleged gang-rape–is a risk "distinctly associated with the conditions" under which she lived. To make such a contention would arguably mean that Halliburton/KBR foresaw the possibility of this occurring; if it had considered the alleged incident a "distinct risk", Halliburton/KBR arguably would have immediately heeded Jones' request to be placed in a private sleeping facility, instead of a barracks where the ratio of men to women was 20 to one.

18

Jones was not on call at the time of the alleged incident, nor was the incident a "risk distinctly associated with the conditions" under which Jones lived. As such, Jones' living in employer-provided barracks is unavailing to Halliburton/KBR's contention that the incident was "related to" her employment for arbitration purposes.

d.

The one consensus emerging from this analysis is that it is fact-specific, and concerns an issue about which courts disagree. When deciding whether a claim falls within the scope of an arbitration agreement, courts "focus on factual allegations in the complaint rather than the legal causes of action asserted". *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 344 (5th Cir. 2004) (quotation marks and citation omitted). Here, the allegations are as follows: (1) Jones was sexually assaulted by several Halliburton/KBR employees *in her bedroom*, *after-hours*, (2) while she was *off-duty*, (3) following a social gathering outside of her barracks, (4) which was some distance from where she worked, (5) at which social gathering several co-workers had been drinking (which, notably, at the time was only allowed in "non-work" spaces).

Of further note, the record is unclear regarding both how free Jones was to travel in the Green Zone and whether non-Halliburton employees were allowed in Camp Hope, where the alleged incident occurred. If Jones was not restricted to Camp Home, but was able to travel in the wider Green Zone area, Halliburton's contention that the nature of her employment was pervasive and all-encompassing, such that most aspects of her life were "related to" it, would be weakened. The Green Zone housed a multitude of civilian workers in a wide range of occupations, and was the situs of many potential recreational and other social outlets that arguably could not be said to relate to Jones' employment.

Moreover, if non-Halliburton/KBR employees were allowed in the area where the alleged assault occurred, and Halliburton/KBR employees had assaulted such a non-employee, that person obviously would have an actionable claim. That Jones was the victim in the alleged assault, and that she happened to be a co-worker of the alleged perpetrators, should not, and does not, change the calculus.

In so noting, we do not make a statement on Jones' freedom of movement, or that of non-employees of Halliburton/KBR, within the Green Zone. This was both unclear from the record and disputed by counsel in the briefing and at oral argument. The facts that can be definitively gleaned from the record are sufficient to support our decision; the above suppositions, however, provide further reason why what allegedly occurred would not be "related to" Jones' employment, were the record more clear.

Under these circumstances, the outer limits of the "related to" language of the arbitration provision have been tested, and breached. Halliburton/KBR essentially asks this court to read the arbitration provision so broadly as to encompass any claim related to Jones' *employer*, or any incident that happened *during her employment*, but that is not the language of the contract. We do not hold that, as a matter of law, sexual-assault allegations can never "relate to" someone's employment. For this action, however, Jones' allegations do not "touch matters" related to her employment, let alone have a "significant relationship" to her employment contract.

2.

Having decided that Jones' claims are not "related to" her employment for purposes of the arbitration clause, at issue is Halliburton/KBR's second contention regarding the language in that clause: Jones' claims fall within the scope of the arbitration agreement because the DRP–incorporated by reference into Jones' employment contract–defined covered disputes even more broadly,

specifically including as an example of an arbitrable claim "any personal injury allegedly incurred *in or about the workplace*". (Emphasis added.) It asserts that, at the very least, the alleged personal injury (rape), which allegedly took place in Jones' barracks bedroom, occurred "in or about the workplace".

Jones counters: Halliburton/KBR is raising the "*in or about* the workplace" language for the first time on appeal; her employment contract includes only personal injuries "arising in the workplace". Halliburton/KBR replies that it did raise this broad DRP language in district court when it cited the DRP in its motion to compel arbitration.

Regardless of whether we are interpreting "in", or "in or about", the workplace, neither phrase encompasses Jones' claims. As noted, the district court concluded, and we agree, that "Plaintiff's bedroom should [not] be considered the workplace, even though her housing was provided by her employer". *Jones*, 2008 WL 2019463, at *10. Halliburton/KBR provided Jones' housing, and Jones did not pay rent to live there. Nonetheless, just as we held that the incident was not "related to" her employment for purposes of arbitration because she lived in employer-provided housing, we also hold that this fact does not establish the incident occurred "in or about the workplace".

As the district court noted, the barracks were some distance from where Jones worked, and there is no indication Jones or anyone else performed any job duties at the barracks. Further, as stated in the affidavit of a Halliburton/KBR Human Resources supervisor in Iraq: prior to the incident at issue, drinking was allowed in off-duty hours and *non-work spaces*. As noted, Jones and her co-workers had been drinking in the public space outside of her barracks before the alleged sexual assault. For purposes of deciding the scope of the arbitration provision, this is very persuasive that Halliburton/KBR did not consider the barracks to be a "workplace".

## C.

In the alternative, Jones contends that, should her claims be deemed arbitrable, Halliburton/KBR cannot invoke equitable principles to enforce specific performance of the arbitration clause because it has "unclean hands". Specifically, Jones alleges: Halliburton/KBR was aware of numerous sexual assaults perpetrated by its employees on women in Iraq, but did not use this knowledge to deter further assaults; it impeded Jones' ability to procure evidence by holding her incommunicado after the incident; and it used the arbitration clause to shield itself from liability and damages.

The district court disagreed with Jones on this point, because her allegations regarding Halliburton/KBR's unclean hands did not address the enforcement of the arbitration agreement itself, but went to the merits of her fraudulent-inducement claim. In any event, because we hold the four claims the district court deemed non-arbitrable fall outside the scope of the arbitration provision, we need not reach this issue.

## III.

Although the Dissent's observation at 3 of the "inefficien[cy] of adjudica[tion] [of] these claims before different fora" may be correct, it is unavoidable because, based on this record, and for the reasons stated, four claims are not within the scope of the arbitration clause. Accordingly, the denial in part of the motion to compel arbitration is AFFIRMED, and this matter is REMANDED to district court for further proceedings consistent with this opinion.

AFFIRMED and REMANDED.

DeMOSS, Circuit Judge, Dissenting:

I respectfully dissent from the majority's opinion on the basis that Jones's tort claims are related to her employment.

The arbitration clause states, in relevant part, that "any and all claims [Jones] might have against the company related to [her] employment . . . and any and all personal injury claims arising in the workplace" are subject to binding arbitration. Arbitration clauses purporting to cover all disputes "related to" an employee's employment are interpreted to cover "all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (quotation omitted). When faced with such a broad arbitration clause "it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). This court has held that when the scope of an arbitration clause "is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration." *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (quotation omitted); *see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (courts "must resolve all ambiguities in favor of arbitration"). In my view, the issue before this court is debatable and therefore should be resolved in favor of arbitration.

A finding that Jones's claims are subject to arbitration does not, in my opinion, require arbitration merely because there is an employer-employee relationship; nor does such a finding result in there being no "outer limit" to what is related to Jones's employment. Under the particular facts and circumstances of this case, I would find that the outer limits of the "related to" language are not exceeded when the alleged rape and false imprisonment occurred on company-owned barracks located in a war zone and Jones was required to reside in the barracks as a condition of her employment. If the attacks had occurred in the Green Zone at large, or at a location where Jones was not required to be, her claims would arguably not be related to her employment.

Other courts construing a substantially similar arbitration clause have found these claims to be "related to" the plaintiff's employment and thus subject to arbitration. In *Barker v. Halliburton Co.*, 541 F. Supp. 2d 879, 887 (S.D. Tex. 2008), which involved similar facts and an identical arbitration clause, the court held that "overseas employees do not have bright lines between their working time and their leisure time. Long established Fifth Circuit precedent holds that personal activities of a social or recreational nature must be considered as incident to the overseas employment relationship." *Id.* at 887-88 (quotations omitted) (citing *O'Keeffe v. Pan Am. Airways, Inc.*, 338 F.2d 319, 322 (5th Cir. 1964)). In these circumstances, barracks could be considered part of the work

environment. *See id*. at 888. As the majority points out, the *O'Keeffe* court was analyzing the course and scope of employment under the Defense Bases Act, which provides worker's compensation for overseas employees. In *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506 (1951), the Supreme Court noted that worker's compensation was "not confined by common-law conceptions of scope of employment." While I agree with the majority that the liberal construction of scope of employment for purposes of worker's compensation is not necessarily the same standard to be applied when construing the terms of an arbitration agreement, I do find it persuasive when the arbitration agreement contains similar language. Thus, I agree with the holding of the district court in *Barker* that under these circumstances, the claims are related to a plaintiff's employment. 541 F. Supp. 2d at 887-88; *see also Oravetz v. Halliburton Co.*, No. 7-20285-CIV-ZLOCH (S.D. Fla. July 24, 2007) (claims of sexual assault that took place at plaintiff's employer provided housing were related to plaintiff's employment under a similar "related to" arbitration clause); *United States ex rel McBride v. Halliburton Co.*, 2007 WL 1954441, at *5 (D.D.C. July 5, 2007) (plaintiff's claims for false imprisonment were subject to arbitration under similar "related to" arbitration clause).

Finally, Jones's claims are inextricably connected because they arose from the same incident and the evidence of the claims will necessarily overlap. It seems inefficient to adjudicate these claims before different fora.[1]

For these reasons, I respectfully DISSENT from the majority's opinion.

---

[1] I also note that Jones asserts that Halliburton/KBR is vicariously liable for her claims of sexual assault, false imprisonment, IIED, and negligent hiring, retention, and supervision of employees. In order to succeed on these claims on a theory of vicarious liability, Jones must show that the individual defendants were acting within the scope of their employment. Jones and the individual defendants were all employees of Halliburton/KBR, required to live in the barracks, and were socializing in the barracks while off-duty. Although vicarious liability is based on agency law and the interpretation of an arbitration agreement is based on contract law, I cannot see how Jones can successfully distinguish the district court's holding that the incident was not related to Jones's employment but, under the same circumstances, was within the scope of the individual defendants' employment.